**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES,<br><br>Plaintiff,<br><br>v.<br><br>LUIS VAQUERO,<br><br>Defendant. | Case No. 25-PO-15007 (SDA)<br><br>**OPINION and ORDER**<br><br>Hon. Stacey D. Adams |

**STACEY D. ADAMS, United States Magistrate Judge**

Pending before the Court is a joint request from both the Government and Defendant Luis Vaquero ("Defendant") to amend his Judgment of Conviction pursuant to Fed. R. Crim. P. 35(a) to remove that portion of the sentence imposing one year of supervised release. (ECF No. 29). At the request of the Court, both parties submitted supplemental briefing. (ECF Nos. 34 and 35). For the reasons set forth below, the Court DENIES the request to amend the Judgment of Conviction.

## PROCEDURAL HISTORY

On February 10, 2025, Defendant was charged by criminal complaint with one count of Interference with Flight Crew Members and Attendants, in violation of 49 U.S.C. § 46504. (ECF No. 1). The maximum penalty associated with such crime is 20 years imprisonment. 49 U.S.C. § 46504. Defendant was released with conditions following his initial appearance on February 10, 2025. (ECF No. 5). Within two weeks, Defendant was back before the Court for a bail revocation hearing after he was arrested and charged with 5 different offenses within days of his release. (ECF No. 10). Bail was revoked and Defendant was detained on February 20, 2025. (ECF No. 13).

Defendant remained detained until September 25, 2025, at which time he was again released with conditions after entering into a plea agreement with the Government. (ECF Nos. 19,

24). Defendant's exposure under the reduced charges in the plea agreement were four to ten months imprisonment. (ECF No. 17). By this time, Defendant had already been detained for over six months, and had shown significant improvements in his mental health, so the Court made the decision to release him with conditions. (ECF No. 19).

Six days later, on October 1, 2025, Defendant pled guilty to an Information which charged him with one count of simple assault, in violation of 18 U.S.C. § 113(a)(5) and 49 U.S.C. § 46506. (ECF Nos. 21, 22, and 23). The factual basis for the plea, admitted by Defendant on the record, established that, on February 9, 2025, Defendant was a passenger on a flight from Miami to Newark Liberty International Airport, during which he threatened two individuals stating "[y]ou better watch out, shit's gonna happen to you" and "I will really break your fuckin' jaw" and displaying a show of force that would have reasonably caused the two victims to fear bodily harm. (ECF Nos. 22, 24). The plea agreement signed by the Government, Defendant and his counsel explained that, in addition to a statutory maximum prison sentence of six months and a potential fine, the sentencing judge "may require [Defendant] to serve a term of supervised release of not more than one year, which will begin at the expiration of any term of imprisonment imposed." (*Id.*). The plea agreement further provided that the Government and Defendant "will stipulate at sentencing to the statements set forth in the attached Schedule A." (*Id.*). Schedule A, in turn, contained the following language:

> If the term of imprisonment does not exceed 6 months, and except as specified in the next paragraph below, [Defendant] will not challenge or seek to reduce by any means any component of the sentence imposed by the sentencing judge for any reason other than ineffective assistance of counsel. The term "any means" includes a direct appeal under 18 U.S.C. § 3742 or 28 U.S.C. § 1291, a motion to vacate the sentence under 28 U.S.C. § 2255, a motion to reduce the term of imprisonment under 18 U.S.C. § 3582(c)(1)(B) or (c)(2), *a motion for early termination of supervised release* under 18 U.S.C. § 3583(e)(1), or any other appeal, motion, petition, or writ, however

> captioned, that seeks to attack or modify any component of the sentence. If the Court imposes a term of imprisonment or probation, [the Government] will not challenge by appeal, motion, or writ any component of the sentence imposed by the sentencing judge.

(*Id.*) (emphasis added).

Consistent with the plea agreement, the plea memorandum submitted by the Government to the Court also listed a term of up to one year of supervised release as a possible penalty. Clearly, then, the parties had discussed and contemplated the imposition of supervised release as part of the Court's sentence, Defendant was appropriately notified that he might be sentenced to supervised release, and Defendant signed the plea agreement fully aware of this possibility.

Consistent with the explicit language in the plea agreement, at the plea hearing before the undersigned on October 1, 2025, the Court notified Defendant that he may be subject to a term of supervised release not to exceed one year and that "in addition to any term of imprisonment that may be imposed in this case [he] may be required to serve a term of supervised release after [his] imprisonment." (ECF No. 37, Tr. 17:24-18:1, 7-13). The Court explained the term of supervised release would be in addition to any time he previously served. (*Id.* Tr. 18:19-21) Defendant noted his understanding. (*Id.* Tr:18:2-21). At no point did either the Government's counsel or Defense counsel object to this provision. To the contrary, they specifically included it in the plea agreement they drafted and signed. (ECF No. 24).

Sentencing proceeded on November 4, 2025. (ECF No. 25). The Court adopted the recommendation of the Government and the United States Probation Office ("Probation") in the Presentence Investigation Report (the "PSR"). (ECF No. 22). Like the plea agreement, the PSR set forth as a sentencing option "a term of supervised release of not more than one year." (*Id.*) (citing 18 U.S.C. § 3583(b)(3)). It included supervised release as an available sentencing option despite simultaneously acknowledging in the PSR that Defendant was charged with a Class B

misdemeanor and that the United States Sentencing Guidelines therefore did not apply. (*Id.*). Neither Defendant nor the Government objected to the PSR. (ECF No. 30, Tr. 5:9-17). The Court sentenced Defendant to time served plus one year of supervised release. (ECF No. 26). Notably, while defense counsel asked the Court during the sentencing hearing to impose a shorter period of supervised release, she did not object to the Court imposing any term of supervised release. (ECF No. 30, Tr. 13:10-11).

Among other special conditions imposed, the Court required Defendant to engage in alcohol and drug treatment and mental health treatment. This was an important aspect of the Court's decision, as Defendant's conduct during the incident on the plane and at the time his bail was revoked indicated he was suffering from mental health issues that contributed to his behavior. Defendant's mental health appeared to be improving at the time of sentencing and the Court wanted to ensure he remained on track. Indeed, in imposing the term of supervised release, the Court stated:

> [it] believe[d] that the one year term of supervised release will help insure the defendant stays on track with his mental health treatment and any substance abuse treatment that may be needed. It will also provide the defendant with the resources necessary to continue his education, find employment and become a productive member of society.

(ECF No. 30, Tr. 26:18-24). No appeal was filed and no timely request to amend or correct the Judgment of Conviction was made.

More than eight months later, on July 20, 2026, a petition for violation of supervised release ("VOSR") was filed with the Court. (ECF No. 28). Among other things, the petition alleges that, during his term of supervised release, Defendant was arrested and charged with aggravated assault during a domestic violence incident. *(Id.*). On July 22, 2026, the day prior to Defendant's scheduled initial appearance on the VOSR, the parties submitted a joint request for the Court to issue an

Amended Judgment of Conviction pursuant to Fed. R. Crim. P. 35(a) with a corrected sentence of six months of imprisonment and no term of supervised release. (ECF. No. 29). The letter contended that "the imposition of supervised release is not permitted under the law in this case." (*Id.*). The Court ordered further briefing, which was submitted by the Government on August 6, 2026 (ECF No. 34) and by defense counsel on August 11, 2026. (ECF No. 35). It delayed Defendant's appearance on the VOSR pending this decision.

## ANALYSIS

### I. Timeliness of Request Under Fed. R. Crim. P. 35(a)

The first issue the Court must address is whether the request to amend the judgment is proper. Fed. R. Crim. P. 35(a) provides that "[w]ithin 14 days after sentencing, the court may correct a sentence that resulted from arithmetical, technical, or other clear error." The parties' July 22, 2026 request was submitted well after the expiration of that deadline. The question then is whether this deadline can be waived. The Court concludes it may not.

The parties acknowledge that Third Circuit law dictates that the 14 day requirement in Rule 35 is "jurisdictional" and that the Court therefore "lacks the authority to act under the Rule outside this period." (ECF Nos. 34 and 35) (citing *United States v. Miller*, 594 F.3d 172, 183 (3d Cir. 2010); *United States v. Higgs*, 504 F.3d. 456, 463-64 (3d Cir. 2007)). The Government nevertheless argues that this well-established principle should be abandoned because, since *Miller*, "the Supreme Court has clarified that 'a time limit prescribed in a court-made rule'… is a waivable claims processing rule, not a subject matter jurisdictional constraint on a court's power." (ECF No. 34 at p. 3) (citing *Hamer v. Neighborhood Hous. Servs.*, 583 U.S. 17, 19 (2017)). The parties contend that this Court is not bound by Third Circuit precedent when a subsequent Supreme Court decision overrules, or

renders a decision inconsistent with, Third Circuit authority. (ECF No. 35) (citing *Rogers v. Grewal*, No. 18-cv-1544 (BRM)(DEA), 2018 WL 2298359, at *3 (D.N.J. May 21, 2018)).

The Government argues that the word "jurisdiction" has been used too expansively and that "[a] rule does not 'impose jurisdictional limits on courts' power' that 'cannot be waived' unless 'Congress says so clearly.'" (ECF No. 34 at p. 3) (quoting *United States v. Hart*, 983 F.3d 638, 641 (3d Cir. 2020)). It then distinguishes jurisdictional limits from mandatory claims-processing rules, which it defines as those rules that "seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain procedural times." (ECF No. 34 at p. 4) (quoting *Fort Bend Cnty., Tex. v. Davis*, 587 U.S. 541, 548-49 (2019)). The Government provides multiple examples of claims processing rules – including filing deadlines, Fed. R. Crim. P. 33's deadline for new trial motions, and time limitations in the Federal Bankruptcy Rules – that it claims are not jurisdictional in nature. (ECF No. 34) (citing *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 154 (2013); *Eberhart v. United States*, 546 U.S. 12, 13 (2005); and *Kontrick v. Ryan*, 540 U.S. 443, 458-60 (2004)). The Government then concludes that Fed. R. Crim. P. 35(a) is one of these claims processing rules. (ECF No. 34 at p. 4).

The Court disagrees. As an initial matter, the *Hamer* decision is completely inapposite to the matter currently before the Court. In *Hamer,* a civil case alleging employment discrimination, the Supreme Court concluded that the time limit for filing a notice of appeal under Fed. R. App. P. 4(a)(5)(C) was not jurisdictional in nature. *Hamer*, 583 U.S. at 27. In reaching this conclusion, the Supreme Court explained that a time limit emanating from a statute is jurisdictional, whereas a time specification not prescribed by Congress is a mandatory claim-processing rule, and may be waived. *Id.* at 19. As Fed. R. App. P. 4(a)(5)(C) was not derived from a statute, it was not jurisdictional and could be waived.

The parties nevertheless ask that the principles espoused in *Hamer* be expanded from an appellate rule in a civil case to a judgment of conviction in a criminal case. They make this request despite well-established Third Circuit precedent holding that the time limit imposed in Fed. R. Crim. P. 35(a) is jurisdictional. *Miller*, 594 F.3d at 182; *Higgs*, 504 F.3d at 458-59; *United States v. Washington*, 549 F.3d 905, 915-16 (3d Cir. 2008). Indeed, *Higgs* contained a comprehensive analysis of this precise issue and concluded that "Rule 35's time limitation derives from the limitation set forth by statute, 18 U.S.C. § 3582(c)." *Higgs*, 504 F.3d at 464; *see also Washington*, 549 F.3d at 916 (holding that § 3582(c) sets forth "a *statutory* basis for limiting the district courts' jurisdiction' and therefore that Rule 35(a) [] time limit is jurisdictional") (citing *Higgs*, 504 F.3d at 464)) (emphasis in original). As the Third Circuit aptly noted, the Advisory Committee "intended the time limit to be jurisdictional, because the very purpose of choosing a period of time less than the time for filing an appeal was to avoid jurisdictional conflicts between the district and appellate courts." *Higgs*, 504 F.3d at 461.

If this precedent were not enough, the Third Circuit specifically distinguished between civil and criminal cases. In *Washington*, the Third Circuit distinguished the holdings in *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944) and *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991) – both of which held that a federal court has the inherent power to vacate its own judgments – on the grounds that they were civil cases. *Washington*, 549 F.3d at 912. Contrary to the position advanced by the parties here, the Third Circuit held that, unlike civil cases, "[i]n the criminal context, the Supreme Court has held that district courts lack 'inherent supervisory power' to enter an untimely judgment…" and then concluded "we can find no body of law recognizing a federal court's inherent power to vacate a sentence at some indeterminate time after the sentence is rendered." *Id.* at 912-13.

The Government attempts to discount this clear precedent arguing that "the Supreme Court's jurisprudence since *Higgs* clarifies that 18 U.S.C. § 3582 – a statute w[hich] merely references Rule 35 as a means for amending a sentencing without specifying a time limit – is not the 'clear statement' from Congress that the Supreme Court today requires to deem a provision jurisdictional." (ECF No. 34 at p. 4). In support of this proposition, the Government relies on *Bowles v. Russell*, 551 U.S. 205 (2007) and *Fort Bend County, Texas v. Davis*, 587 U.S. 541 (2019). (*Id.*). However, neither case provides a basis for deviating from the Third Circuit's binding precedent. Not only was *Bowles* decided before *Higgs* and *Washington*; it was specifically addressed and cited by the Third Circuit in both decisions *in support of* the conclusion that the time limit in Rule 35 is jurisdictional in nature, specifically because it derives from a statute. *Higgs*, 504 F.3d at 464; *Washington*, 549 F.3d at 915-16. Equally unpersuasive, *Fort Bend* concluded that Title VII's requirement to file a charge of discrimination with the Equal Employment Opportunity Commission as a precondition to filing suit was not jurisdictional in nature and, therefore, could be waived if not promptly raised. 587 U.S. at 552.

There is a difference between a claims processing requirement – such as a procedural precondition or a time limit imposed solely by court rules – and a jurisdictional prescription such as that found in Rule 35. Each of the "claims processing" examples listed by the Government are distinguishable from the case at bar. For example, as the Supreme Court has already recognized, Fed. R. Bankr. P. 4004 is not jurisdictional in nature because "[n]o statute specifies a time limit for filing a complaint objecting to the debtor's discharge." *Bowles*, 551 U.S. at 210-11 (distinguishing the holding in *Kontrick*, 540 U.S. 443, from the jurisdictional deadline for the taking of an appeal from a criminal judgment which has its foundation in 28 U.S.C. § 2107(a)). In contrast, here, the time limitation in Rule 35 is derived from a statute. Similarly, the Supreme Court

has recognized that the deadline to move for a new trial under Fed. R. Crim. P. 33 is distinguishable from the deadline in Rule 35 because a Rule 33 motion is made at the time the district court is still considering post-trial motions, and does not run afoul of the "basic principle of judicial process – that once a final judgment is issued and the court of appeals considers a case, a district court has no power to act on it further." *Eberhart*, 546 U.S. at 17. Finally, like the requirement to file an Equal Employment Opportunity Commission charge under Title VII, the 180 day deadline for filing a Medicare appeal to the Provider Reimbursement Review Board was found not to be jurisdictional in the absence of clear Congressional intent stating otherwise. *Sebelius*, 568 U.S. at 153-54. The jurisdictional proscription in Rule 35 is different in kind from the examples cited by the Government.

In contrast to all of the above examples, the ability to correct a sentence under Rule 35 is grounded in statute. Specifically, 18 U.S.C. § 3582(c)(1)(B) states "The court may ***not*** modify a term of imprisonment once imposed except that… the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure." As this language makes clear, the Court has no jurisdiction to modify a term of imprisonment except as specifically within the confines of Rule 35. That Rule, in turn, prohibits correction of an error if it is not made within 14 days after sentencing.

Consistent with this Court's interpretation, there have been numerous cases in this District since the Supreme Court's decision in *Hamer* that have continued to rely upon *Higgs, Washington* and *Miller* and have maintained that the 14 day time limit in Rule 35 is indeed jurisdictional. *See, e.g., United States v. Johnson*, No. 2:01-CR-538-02 (SDW), 2026 WL 1693553, at *2 (D.N.J. June 11, 2026); *United States v. Torres*, No. 2:20-CR-00418 (BRM), 2024 WL 3534139, at *3 (D.N.J. July 25, 2024); *United States v. Abreu*, No. 2:20-CR-642 (SRC), 2023 WL 2932590, at *1 (D.N.J.

Apr. 13, 2023); *Vazquez-Uribe v. United States*, No. 2:01-CR-768 (SDW), 2018 WL 10667955, at *2 (D.N.J. Aug. 27, 2018). Notably, not a single case was cited by either party where Rule 35 was held to be a non-jurisdictional claims processing rule since *Hamer.* (ECF Nos. 34 and 35). The parties thus ask this Court to overstep an express ruling of the Third Circuit, that has been repeatedly reconfirmed by District Judges within this Circuit, on the basis of an inapposite civil case that has never been applied to a Rule 35 motion made in a criminal case. This the Court is not prepared to do. It is bound by Third Circuit precedent and that precedent is clear: the time limits in Rule 35 are jurisdictional.

Notably, even if the Court were to conclude that the time limitation in Rule 35 was a waivable claims processing rule, it would not help the parties' position. To the contrary, it works against them. A "jurisdictional defect is not subject to waiver or forfeiture." *Hamer*, 583 U.S. at 20. In contrast, "a mandatory claim-processing rule [is] subject to forfeiture if not properly raised…." *Id.* at 19. If, as the parties' argue, the 14 day time limit in Rule 35 is indeed a claims processing rule, then they waived it by failing to timely raise it. *Id.* ("mandatory claims-processing rules must be enforced, but they may be waived or forfeited"). Indeed, the bulk of cases cited by the Government in support of its claims processing argument resulted in forfeiture of the claimed right. *See, e.g., Fort Bend*, 587 U.S. at 552 (defense that plaintiff failed to file a charge of discrimination, which was not jurisdictional, was barred because it was not timely raised); *Eberhart*, 546 U.S. at 19 (government forfeited its argument that plaintiff's motion for a new trial under Rule 33 was untimely when it first raised the objection on appeal); *Sebelius*, 568 U.S. at 154-57 (because the requirement to timely file a Medicare appeal within 180 days was not jurisdictional, the providers' failure to timely appeal within this extended period resulted in the forfeiture of the appeal). The parties cannot "have their cake and eat it too." If, as they argue, the

14 day time limit in Rule 35 is a mandatory claims processing rule, then their failure to raise it is fatal to their argument.

The motion to correct was not made until more than 8 months after sentencing. Neither party has explained their delay in timely seeking to amend the judgment or provided good cause for extension of the deadline. Indeed, no excuse whatsoever was offered for the extended delay in seeking relief under Rule 35. This is not a situation where some new fact was discovered that belatedly caused the parties to discover an error in sentencing. Rather, the parties contend the sentence was illegal *from its inception* – yet they chose not to raise it with the Court until it came to the forefront as a result of Defendant's VOSR. Indeed, absent Defendant's VOSR, the Court highly doubts this request would have been raised *at all*. In fact, both parties (i) signed a plea agreement that advised Defendant a sentence of supervised release may be imposed; (ii) failed to object to the PSR, which specifically listed supervised release as a potential part of sentencing; and (iii) argued in favor of a term of supervised release at the sentencing hearing. They provide no explanation for their sudden and complete change in position almost 8 months later. Defendant's alleged violation of the conditions of his supervised release certainly does not establish good cause.

In sum, the 14 day requirement under Fed. R. Crim. P. 35 is jurisdictional and the Court is therefore powerless to entertain such an application after the deadline expires. However, even if Rule 35 is a mandatory claims processing rule, the parties offer no good reason for deviating from the deadline promulgated under that rule. Deadlines in Court rules are meant to be followed and should only be waived for good cause. The purpose of the 14 day limit in Rule 35 is to afford the Court an opportunity to correct a clear error before the deadline to appeal expires. If parties were able to seek correction at any time – including after the deadline to appeal has passed or, even

worse, after an appeal has been heard and resolved - it would render chaos to our criminal system. Therefore, the Court rejects the parties' request to correct the sentence under Rule 35.

## II. Was The Imposition of Supervised Release Improper

Although the Court need not proceed past the untimeliness issue under Rule 35, the Court now turns to the more fundamental question of whether the imposition of supervised release was indeed unlawful. The Court concludes it was not.

The parties argue that, because simple assault in violation of 18 U.S.C. § 113(a)(5) carries a statutory maximum term of imprisonment of 6 months, it is a Class B misdemeanor. (ECF Nos. 34 and 35). They argue that Defendant's offense is therefore a "petty offense" under 18 U.S.C. § 19. According to the parties, supervised release is not available for a petty offense under 18 U.S.C. § 3583(b). Although the Court recognizes that many decisions have reached the same conclusion – albeit none in the Third Circuit – the Court finds this to be an overly limited and inaccurate interpretation of the relevant statutory provisions.

Pursuant to 18 U.S.C. § 113(a)(5), the offense of simple assault is punishable "by a fine under this title or imprisonment of not more than six months, or both." 18 U.S.C. § 3559(a)(7) classifies an offense as a Class B misdemeanor if the maximum term of imprisonment authorized is six months or less but more than 30 days. 18 U.S.C. § 19 defines "petty offense" as "a Class B misdemeanor, a Class C misdemeanor, or an infraction, *for which the maximum fine is no greater than the amount set forth for such an offense in section 3571(b)(6) or (7) in the case of an individual.*" (emphasis added). 18 U.S.C. § 3571(b)(6), in turn, provides that the fine may not exceed $5000 for a Class B or C misdemeanor. In other words, "Class B Misdemeanor" and "petty offense" are related, but not interchangeable statutory classifications. The former classifies the offense by the maximum authorized imprisonment term, while the latter classifies the offense by

the maximum fine. Thus, not all Class B misdemeanors are automatically deemed petty offenses. *See, e.g.*, 29 U.S.C. § 666(g) (knowingly making a false statement to Occupational Safety and Health Administration is punishable by up to 6 months imprisonment and a $10,000 fine); 16 U.S.C. § 1540(b)(1) (knowingly violating regulations pertaining to endangered species punishable by up to 6 months imprisonment and a $25,000 fine); 29 U.S.C. § 216(a) (willful, secondary violation of the Fair Labor Standards Act is punishable by up to 6 months imprisonment and $10,000 fine). Here, the Court agrees that a simple assault in violation of 18 U.S.C. § 113(a)(5) that did not involve a victim under the age of 16, did not result in death and did not result in a pecuniary loss constitutes both a Class B Misdemeanor and a petty offense, because the maximum authorized term of imprisonment is 6 months and the maximum fine is $5000.

The next question is whether, as a petty offense, the Court may impose a term of Supervised Release. This is where the Court disagrees with the parties. According to the parties, 18 U.S.C. § 3583(b)(3) prohibits a term of supervised release from being imposed for a petty offense. (ECF Nos 34 and 35). A literal reading of the statute demonstrates the flaw in this position.

Start with 18 U.S.C. § 3583(a) which states that:

> In general. – The court, in imposing a sentence to a term of imprisonment for a felony ***or a misdemeanor***, *<u>may</u>* include as a part of the sentence a requirement that the defendant be placed on a term of supervised release after imprisonment, except that the court *<u>shall</u>* include as part of the sentence a requirement that the defendant be placed on a term of supervised release if such a term is required by statute… (emphasis added).

As the language makes clear, the Court has the discretion to impose a term of supervised release for a misdemeanor. *Id.* Nowhere does the statute limit this discretion to only Class A misdemeanors, and nowhere does it state that a term of supervised release may not be imposed for

Class B misdemeanors or petty offenses. *Id.* Instead the statute plainly contemplates the Court's ability to impose a term of supervised release following a term of imprisonment for a misdemeanor.

Continue on to 18 U.S.C. § 3583(b) which states, "[e]xcept as otherwise provided, the authorized terms of supervised release are… for a misdemeanor (other than a petty offense), not more than one year." The parties read this language as prohibiting any term of supervised release for a petty offense. However, nowhere does the statute state that. It is clear that, for all misdemeanors *other than a petty offense*, the maximum term of supervised release is one year. But the statute is silent as to whether a lesser term of supervised release is permitted for a petty offense. The parties construe § 3583(b) as providing an exhaustive list of authorized terms of supervised release for certain offenses and conclude that, since § 3583(b) does not specify a limit for petty offenses, supervised release for a petty offense is not permitted *at all*. In reaching this conclusion, the parties completely discount the conflicting language in § 3583(a) which specifically affords the Court this right.

Admittedly, several circuits have adopted the position advanced by the parties. *See, e.g., United States v. Wysocki*, 463 F. App'x 814, 815 (11th Cir. 2012) (summarily holding, without further analysis, that "the term of [supervised] release was unlawful because the plain meaning of the sentencing statute prohibits the imposition of supervised release for the conviction of a petty offense"); *United States v. Jourdain*, No. 93-2616, 1994 WL 209914, at *1 (8th Cir. May 20, 1994) (table decision found at 26 F.3d 127) (reversing that portion of defendant's sentence that imposed a one year term of supervised release because he pled guilty to a petty offense); *United States v. Thornton*, No. 99-30265, 2000 WL 732929, at *1 (9th Cir. June 5, 2000) (table decision found at 225 F.3d 665) (modifying judgment to strike term of supervised release because defendant was convicted of petty offenses and "18 U.S.C. § 3583(b)(3) specifically exempts petty offenses from

the imposition of supervised release"). *But see United States v. LaValley*, 957 F.2d 1309, 1312 (6th Cir. 1992) (holding, for purpose of the right to a jury trial, that an offense carrying a "maximum statutory punishment… [of] a six month period of incarceration, a fine of $5,000 and a *five year term of supervised release*" was petty, implicitly suggesting that supervised release may be imposed for petty offense) (emphasis added).

The Third Circuit has not yet weighed in on this issue, and none of the aforementioned decisions contain a detailed analysis of why these courts reached the conclusion they did. This Court is reluctant to read into the statutory text a limitation that Congress did not expressly impose, particularly when such a reading would conflict with the express authority vested in the Courts under § 3583(a). *See Dodd v. United States*, 545 U.S. 353, 357 (2005) (alteration in original) (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992)) (stating that a Court "must presume that [the] legislature says in a statute what it means and means in a statute what it says there"); *United States v. Johnson*, 114 F.4th 148, 160 (3d Cir. 2024), *cert. denied*, 145 S. Ct. 1960 (2025) (rejecting a defendant's interpretation of a statute because the Court "lack[s] the power to insert such a modifier"); *Chalmers v. Shalala*, 23 F.3d 752, 755 (3d Cir. 1994) ("[W]e are not free to read into the statute or the regulation a requirement that is not there"); *Comm'r of Internal Revenue v. Allen*, 108 F.2d 961, 964 (3d Cir. 1939) (rejecting respondent's interpretation to include a statutory limitation because it "would require that [the Court] read into the statute something that is not there and place upon it a limitation which could not be justified on any reasonable ground"); *King Pharms., Inc. v. Teva Pharms. USA, Inc.*, 409 F. Supp. 2d 609, 617 (D.N.J. 2006) (quoting *Sandoz Chem. Works*, *Inc. v. United States*, 50 C.C.P.A. 31, 34 (1963)) ("This Court cannot 'amend or read into the statute by construction that which is not there'").

The Court is particularly concerned about relinquishing its right to supervised release given the important function it plays in the context of less serious crimes such as petty offenses. Supervised release affords the opportunity to ensure that a defendant gets proper oversight for a period of time and has access to services that might otherwise be unavailable to him, such as mental health treatment, substance abuse treatment, and assistance finding employment. This, in turn, helps deter future crimes, protects the community and encourages the defendant to become a productive and law-abiding member of society. Supervised release can be a particularly important tool when addressing a less serious crime, where the Court might be hesitant to incarcerate an individual but feels that some degree of supervision is appropriate.

Take the instant matter. The Court had serious concerns about the well-being of Defendant. The incident that led to his arrest, which occurred on a plane and involved threatening several victims, was troubling and he originally faced significant jail time. (ECF No. 1). He violated the terms of his release almost immediately in a number of troubling incidents resulting in revocation of his bail. (ECF No. 13). Defendant presented as someone who suffered from mental health and substance abuse issues that contributed to his criminal acts. (ECF Nos. 1, 2 and 12). Defendant admitted that the treatment he received while incarcerated had significantly improved his mental health. (ECF Nos. 17, 30 at Tr. pp. 13-14). Ensuring he continued this treatment was a significant component of the Court's decision. However, by the time Defendant appeared for sentencing, because he pled to a petty offense, he had already served his maximum term of imprisonment. Thus, probation was not an option. If the Court were not afforded the ability to keep Defendant on supervised release – as everyone agreed was appropriate – it would have been left with no option but to sentence Defendant to "time served" and let him walk away without any further supervision by the Court. Had the Court timely been made aware of this potential outcome by the parties or

Probation – as opposed to the parties and Probation repeatedly informing it that supervised release was available – it might not have accepted a plea that allowed Defendant to walk away without any further accountability to the Court.

The need for the ongoing supervision is even more pronounced by Defendant's recent alleged VOSR. The petition references an incident of domestic violence on July 16, 2026 wherein the victim, Defendant's girlfriend, alleged that Defendant "shoved her into refrigerator, grabbed her by the mouth, grabbed her by the throat, and scratched her neck." (ECF No. 28). The Officers allegedly observed visible injuries on the victim. (*Id.*) Officers also noted Defendant was visibly intoxicated at the time of the incident. (*Id.*). This highlights the precise reason why the Court felt compelled to impose some level of supervision after Defendant's release from incarceration: to hopefully prevent this precise type of situation.

For all of these reasons, the Court disagrees that Congress intended to prohibit the imposition of supervised release for petty offenses. It is inconsistent with the language of § 3583(a), reads an exclusion into § 3583(b) that is not expressly stated, and results in an outcome that is contrary to the remedial purpose of the Sentencing Reform Act. However, the Court need not expressly decide this issue in the context of the current motion, as it has already concluded that the Court lacks jurisdiction to hear an untimely motion under Rule 35 and, therefore, the question is not properly before it.

## III. Did Defendant Waive Any Error Under the Doctrine of Invited Error

Even if there was an error, the parties waived it under the doctrine of invited error. "Under the invited error doctrine, '[a] defendant cannot complain on appeal of alleged errors invited or induced by himself.'" *United States v. Maury*, 695 F.3d 227, 256, 259 (3d Cir. 2012) (doctrine of invited error barred defendants from challenging a jury instruction they suggested) (quoting *United*

*States v. Console*, 13 F.3d 641, 660 (3d Cir. 1993) (citation and internal quotation marks omitted); *see also Herman v. Hess Oil V.I. Corp.*, 524 F.2d 767, 772 (3d Cir. 1975) (holding that "if there was any error at all, it was 'invited error' and cannot now be a basis for reversal."); *United States v. Love*, 449 F.3d 1154, 1157 (11th Cir. 2006) ("The doctrine of invited error is implicated when a party induces or invites the district court into making an error."); *United States v Brannan*, 562 F.3d 1300, 1306 (11th Cir. 2009) (refusing to review an issue raised on appeal "if it has been waived through the doctrine of invited error").

In the instant matter, the parties abandoned their ability to challenge the imposition of supervised release by explicitly agreeing to it in the plea agreement, failing to object to the suggestion of it in the PSR, advocating for it at the sentencing hearing, failing to make a timely motion to vacate or correct this portion of the sentence, and failing to raise it on appeal. The parties therefore forfeited their ability to challenge the imposition of supervised release under the doctrine of invited error.

In a case remarkably similar to the instant one, the defendant pled guilty to assaulting his wife under 49 U.S.C. § 46506 and 18 U.S.C. § 113(a)(4). *Wysocki*, 463 F. App'x at 815. He was sentenced to jail for a period of 6 months followed by a 12 month term of supervised release. *Id.* Wysocki was then charged with violating the terms of his supervised release as a result of a domestic violence incident. *Id.* Like the instant case, prior to the VOSR hearing, Wysocki challenged his term of supervised release, claiming it was "unlawful because the plain meaning of the sentencing statute prohibits the imposition of supervised release for the conviction of a petty offense." *Id.* The court declined to review the issue under the doctrine of invited error where "the defendant, prior to sentencing, repeatedly acknowledged that he was subject to a term of supervised release and requested… a term of supervised release." *Id.* Notably, the court held "a defendant,

facing re-incarceration upon the revocation of supervised release, may not sidestep § 2255 and challenge the validity of his original sentence during the revocation hearing." *Id.* at 816; *see also United States v. White*, 416 F.3d 1313, 1316 (11th Cir. 2005) (holding that a defendant may not challenge his underlying sentence for the first time on an appeal from the revocation of his supervised release); *United States v. Abboud*, No. 22-11111, 2024 WL 1654753, at *5 (11th Cir. Apr. 17, 2024) (precluding defendant from challenging his sentence of supervised release for a petty offense where the defendant acknowledged that a term of supervised release could be imposed and requested a term of supervised release at his sentencing).

Here, there can be no doubt that the doctrine of invited error applies. As described above, the parties listed supervised release as a potential part of the sentence in the plea agreement. (ECF No. 24). Defendant was specifically informed that he might be sentenced to a term of supervised release at the plea hearing, and he indicated he was aware of this possibility and agreed to it. (ECF No. 37, Tr. 18:7-21). Both parties reviewed the PSR, in which Probation set forth the possibility that a term of supervised release would be opposed, and neither raised any objection. (ECF No. 22; ECF No. 30, Tr. p. 5). In fact, at sentencing, the Government specifically asked for a year of supervised release and explained the reasons why it believed it was necessary in this specific case. (ECF No. 30, Tr. pp. 8-12) (in addition to time served "the Government is also asking for a year of supervised release. Which is the maximum possible length of supervised release."). Defendant also did not object to a term of supervised release at sentencing; instead, he merely requested a shorter term. (ECF No. 30 at Tr. p. 13) ("we think a lower time of supervised release would be appropriate").

The Government nevertheless argues that the doctrine of invited error does not apply because the Supreme Court recently ruled that a defendant's appellate waiver will not be upheld if

the result would work a "miscarriage of justice." (ECF No. 34 at p. 5) (citing *Hunter v. United States*, 608 U.S. 713 (2026)[1]. It further contends that the 11th Circuit has clarified that, even if welcomed by a defendant, a statutory maximum penalty cannot be waived. *United States v. Charles*, 129 F.4th 1334 (11th Cir. 2025). Neither of these cases addressed the doctrine of invited error.

*Hunter* concerned the enforceability of an appeal waiver. *Hunter*, 608 U.S. at 717. Despite agreeing to an appeal waiver, the defendant immediately filed an appeal after sentencing challenging that portion of the sentence that imposed a mandatory medication condition. *Id.* at 720. The Supreme Court held that "an appeal waiver is unenforceable when it would result in a miscarriage of justice." *Id.* at 727. It then went on to explain the substantial burden necessary to meet this standard:

> That rule, properly understood and applied, sets a high bar: The waiver may be set aside only if the sentence is marred by the kind of egregious error that would bring the judicial system into disrepute. The error must be obvious – not one a judge could reasonably make. And it must be of the type that would undermine public confidence in the judiciary.

*Id.*

The Supreme Court went on to acknowledge the complexity of sentencing a defendant and the possibility that mistakes will sometimes occur. *Id.* It cautioned that "[s]tandard-fare errors in misapplying sentencing law cannot cancel an appeal waiver." *Id.* The Supreme Court did, however, list "a sentence exceeding what the relevant statute allows" as an example of a possible miscarriage of justice that might be sufficient to overcome the appeal waiver. *Id.* at 728.

[1] Mistakenly cited by the Government as *United States v. Hunter*.

*Hunter* did not involve the doctrine of invited error. *Id.* Unlike the instant case, the defendant specifically objected to the mandatory medication condition at his sentencing. *Id.* at 719. *Hunter* therefore did not address whether the defendant abandoned his objection by not timely raising it, as is the case here. Further, even if the miscarriage of justice standard applied, it is difficult to fathom that the imposition of supervised release under the circumstances in the instant case rises to the level of a "miscarriage of justice" as defined by the Supreme Court. First, as explained above, there is no specific statutory language that directly prohibits the Court from imposing supervised release. *Supra*, at 17. Second, both the Government and Defendant not only agreed to the imposition of supervised release, they advocated for it. Third, the imposition of supervised release served an important purpose consistent with the fundamental underpinnings of our criminal justice system: to reduce recidivism and protect the public. There is nothing in the Court's sentence that undermines the judicial system's integrity or discredits the federal courts. *Id.* at 725-26. The alleged error was not "egregious" and is one "a judge could reasonably make" – particularly given the recommendations of the parties and Probation in the plea agreement, the PSR, and during both the plea and sentencing hearings. *Id.* at 727. Indeed, the alleged error – if it was an error at all – is just the type of "standard-fare error" that would not warrant cancellation of an appeal waiver. Thus, *Hunter* neither overrules the invited error doctrine, nor does it mandate correcting any perceived error in the Court's sentence.

*Charles* is equally unpersuasive. 129 F.4th 1334. Unlike the situation here, in *Charles* the court acknowledged on the record that a term of supervised release would exceed the statutory maximum. *Id.* at 1337. The defendant specifically agreed the sentence would be illegal, but waived any objection and conceded to a longer period of supervised release. *Id.* The Government objected, arguing it would be an illegal sentence. *Id.* When the court nevertheless imposed the excessive

term of supervised release, the Government timely appealed. *Id.* Under these facts, the court declined to apply the invited error doctrine. *Id.* at 1338. It did not overrule the doctrine. *Id.* To the contrary, it specifically preserved it, repeating "[i]t is a cardinal rule of appellate review that a party may not challenge as error a ruling or other trial proceeding invited *by that party.*" *Id.* (citing *Love*, 449 F.3d at 1157). It then reconfirmed that "where a party invites the trial court to commit error, he cannot later cry foul on appeal." *Id.* at 1339 (citing *United States v. Carpenter*, 803 F.3d 1224, 1236 (11th Cir. 2015)). It found the invited error rule was not applicable when the opposing party – the Government – invited the error. *Id.* at 1339. While *Charles* ultimately held that a statutory maximum cannot be waived, *id.*, that case involved an acknowledged deviation by the court on the record to an unambiguous statutory limitation that was contested by the Government and then timely appealed. Contrast that with the current situation, where both parties took the position that supervised release was permissible, recommended it be imposed, did not interpose any objections, failed to timely seek correction of the sentence and neglected to timely appeal. Add to this the ambiguity in the statute and the lack of a formal prohibition of supervised release for a petty offense, and *Charles* provides no basis for overcoming the doctrine of invited error.

In conclusion, the Court concludes that the parties abandoned their right to challenge the sentence under the doctrine of invited error.

## IV. Can Defendant Pursue A Direct Appeal

In a last ditch effort to undo a sentencing that it recommended, the Government asks that the Court appoint new counsel for Defendant so that he can file an untimely appeal. (ECF No. 34 at pp. 5-6). The Government suggests that, were Defendant to file an appeal under Fed. R. App. P. 4(b) – which they argue is "rigid but not jurisdictional" – it would waive the time limit and move for summary action vacating the sentence. (ECF No. 34 at pp. 5-6) (citing *United States v.*

*Muhammud*, 701 F.3d 109, 111 (3d Cir. 2012)). The Government intimates that, if the sentence is vacated on appeal and remanded for resentencing, the Court could then impose up to a five-year term of probation to supplant its concern about Defendant not being permitted to serve a term of supervised release. (*Id.*). This suggestion would appear to fly in the face of 18 U.S.C. § 3561(a)(3), which permits the imposition of probation "unless … the defendant is sentenced at the same time to a term of imprisonment for the same or a different offense that is not a petty offense." *See also United States v. Little*, 78 F.4th 453, 454-58 (D.C. Cir. 2023) (holding that the court may impose imprisonment or probation – but not both – for a single petty-offense conviction). Given that Defendant has already been sentenced to a term of imprisonment, i.e. his "time served", it would certainly seem that Probation is not an option.

The deadline for filing a notice of appeal has long since passed. Fed. R. App. P. 4(b). The deadlines can be extended for 30 days upon a showing of excusable neglect or good cause for a period of up to 30 days. *Id.* Obviously, the parties are well beyond even this extended deadline. The Government argues, as it did with respect to Fed. R. Crim. P. 35, that the time limits imposed by Fed. R. App. P. 4(b) are "not jurisdictional." (ECF No. 34 at p. 4). That may indeed be true, but it is still a deadline imposed by Court Rule that is meant to be enforced. Assuming the deadline is not jurisdictional, that does not mean the Circuit Court should simply overlook the untimeliness of the appeal. As discussed above, the parties advanced no "good cause" nor "excusable neglect" for failing to challenge the sentence earlier. *Supra,* at 11. The fact that neither party paid attention to what they now adamantly claim is a clearly unlawful sentence until Defendant violated the terms of his release is not, by any account, "good cause" or "excusable neglect."

Regardless, it is not the District Court's province to decide whether an appeal filed under Fed R. App. P. 4(b) is or is not timely. The Circuit Court will decide the timeliness of the appeal.

If it concludes that this Court errored after considering all of the circumstances articulated herein and the record in its entirety, the Court will revisit its opinion at that time. Until then, the sentence stands and the Court DENIES the parties' motion to correct the record under Fed. R. Crim. P. 35.

For the foregoing reasons, **IT IS,** on this **16th day of November, 2026,** hereby **ORDERED** as follows:

1. The parties motion to correct the record under Fed. R. Crim. P. 35 is hereby DENIED.
2. The Clerk is directed to terminate the motion filed at ECF No. 29, and amplified in ECF Nos. 34 and 35.

***/s/ Stacey D. Adams***
Hon. Stacey D. Adams, U.S.M.J.